1  GLADE L HALL
   Nev. Bar #1609
2  105 Mt. Rose St.
   Reno, NV 89509
3  Tele. (775) 324-6447
   Facs. (775) 324-5387
4
   Attorney for Creditors
5  Allison Taitano (Moore)

RECEIVED AND FILED

2011 AUG -2 PM 2: 39

U.S. ...
MARY A. SCHOTT, CLERK

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In Re:                                )  Case No. BK-N-11-51818 btb
                                      )  Chapter 13
JOHN D. GESSIN,                       )
                                      )  COMPLAINT FOR DETERMINATION
                                      )  OF DISCHARGEABILITY
         Debtor.                      )
                                      )  Hearing date:
                                      )
                                      )  Hearing Time:
_____)
                                      )  Est. Time: 2 hours
ALLISON TAITANO (MOORE),              )
                                      )
         Plaintiff,                   )
                                      )
   vs.                                )
                                      )  Adv. Proc. No. _____
JOHN D. GESSIN,                       )
                                      )
         Defendant.                   )
_____)

ALLISON TAITANO (MOORE), plaintiff herein, by and through GLADE L HALL, her undersigned counsel, for complaint against the defendant, alleges as follows:

1. This is a core proceeding over which this Court has jurisdiction under title 28 U.S.C. Sectioin 157(b).

2. Defendant is a debtor in this Chapter 13 case. Plaintiff is a creditor of the defendant.

3. This is an adversary proceeding to determine the dischargeability of a debt.

4. Defendant is indebted to plaintiff in the sum of $56,802.15 on a debt for an arbitration

1

1  award and judgment finding defendant obtained money by false pretenses, false representation
2  and actual fraud. Specifically, the Second Judicial District Court, in its Judgment, finds specific
3  and detailed procedural abuse and fraud on the Court in delaying and burdening the process and in
4  avoiding the Court's prejudgment attachment. The Court then incorporates and adopts, in its
5  judgment, the arbitrator's FINDINGS OF FACT, set forth on pages 6 through 12 of the
6  ARBITRATION AWARD, by reference. Those findings are realleged herein as follows:

7      1.1    Ms. Taitano is a teacher of U.S. History at a high school in Reno;

8      1.2    Ms. Taitano met Mr. Gessin through an online dating service (Match.com);

9      1.3    Mr. Gessin represented in his Match.com dating profile:

10         that he was a successful businessman
        that he had a graduate degree
11         that he own(s) and operate(s) two business;
        that he made $150,000 per year;
12         that he does extremely well in business;
        that he does extremely well in finances;
13         that he does extremely well in career stability;

14     1.4 Ms. Taitano and Mr. Gessin began a dating relationship;

15     1.5 Mr. Gessin represented in person to Ms. Taitano:

16         that he was a successful stock market investor;
        that he had a stock account with about $90,000.00 in securities;
17         that the stock account was in his father's name so that he could hide his
        assets from the mother of his son;
18         that he could invest Ms. Taitano's money for a higher rate of return;

19     1.6    Ms. Taitano owned a Certificate of Deposit with Wells Fargo opened on November
20 21, 2008 with an initial deposit of $30,000 at an annual percentage yield of 1.65 % and a balance
21 on January 14, 2009 of $29,949.72;

22     1.7    Mr. Gessin took an unusual interest in Ms. Taitano's financial affairs and learned of
23 the Certificate of Deposit and her retirement account with ING;

24     1.8    Mr. Gessin represented the he could invest Ms. Taitano's money and do better
25 through investments than the Certificate of Deposit;

26     1.9    Mr. Gessin represesented to Ms. Taitano that ING was having difficulty and he

27

28                               2

1  advised Ms. Taitano to open an account with Fidelity Investments; an account was set up in which
2  without Ms. Taitano's authorization, Mr. Gessin named himself as Primary Beneficiary;

3      1.10   Ms. Taitano cashed in the Certificate of Deposit in the amount of $29,949.72 and
4  added additional cash and on January 14, 2009 gave $30,000.00 in cash to Mr. Gessin; Mr. Gessin
5  insisted on cash so that he might hide this money from the mother of his child;

6      1.11 . . . This Arbitrator is impressed by Ms. Taitano's effort to recover her money and
7  finds that her efforts overcoming what must be some level of embarrassment at having been
8  persuaded to part with her savings as she did lends credibility to her testimony;

9      1.12   Ms. Taitano instructed Mr. Gessin not to invest in stocks as too risky for her;

10      1.13   False representations were made by Mr. Gessin:

- he does not have a graduate degree;
- he does not own and operate two businesses;
- he does not make $150,000.00 per year;
- in 2007 his Form 1040 Line 7 gross was $26,466.00
- he could not remember the source of $2,935.00 taxable interest;
- he does not do extremely well in business;
- he does not do extremely well in finances;
- he does not do extremely well in career stability;
- he was unemployed in January 2009;
- he is not a successful stock market investor;
- he claims he does not have a stock account with any amount in securities;
- he hides assets from the mother of his son;
- he could not and did not invest Ms. Taitano's money for a higher rate of return;
- he has converted Ms. Taitano's $30,000.00 to his own use;

19      1.14   Mr. Gessin made each representation with knowledge each one was false;

20      1.15   Mr. Gessin made each representation with knowledge that each was material;

21      1.16   Mr. Gessin made each representation with the intention of inducing Ms. Taitano to
22  rely upon it;

23      1.17   Subsequently to Ms. Taitano's giving evidence, Mr. Gessin testified as an adverse
24  witness; Ms. Rissone testified after Mr. Gessin; This Arbitrator finds that Ms. Taitano justifiably
25  relied upon the Mr. Gessin's false representation of material facts, intended to induce reliance by
26  Ms. Taitano;

3

1.18 About the middle of February 2009, Mr. Gessin represented to Ms. Taitano he had a great investment for her in a mobile home that had been sold by him on a lease option and would generate $650; leaving out the "great investment" part this probably the only "truth" to emerge from Mr. Gessin in this entire case; Ms. Taitano advised Mr. Gessin she was not interested and asked about her $30,000;

1.19 On or about February 24, 2009, Ms. Taitano learned from Mr. Gessin that he had invested her money in the stock market contrary to her express instructions and most of it had been lost;

1.20 On or about February 25, 2009 Ms. Taitano met Mr. Gessin at the Tamarack Junctioin and demanded explanation for the loss of her money in the stock market and demanded buy-sell tickets and brokerage statements; none were provided; Mr. Gessin changed his story and represented to Ms. Taitano that he had not lost the money in the stock market but had invested it in a mobile home which had generated a promissory note in his favor;

1.21 Ms. Taitano demanded that Mr. Gessin repay her money from his stock account and learned from him that the stock account was his father's; Mr. Gessin became very angry when Ms. Taitano stated she intended to call his father;

1.22 On or about February 26, 2009 Mr. Gessin intended to deliver and did deliver a mobile home title to Ms. Taitano as security for her $30,000.00; this was Certificate of Ownership B-095164 signed off by the Owner, Kim Kaltenbrun, on April 7, 2007 and by Green Tree Servicing LLC FKA Green Tree Acceptance on March 9, 2007;

1.23 Mr. Gessin sold a mobile home to Gene R. Aquino and Mary Ann D. Kang bu a written Agreement to Purchase ("The Agreement" The Contract of Sale") entered into on August 9, 2008; the basic terms are a purchase price of $49,620.71 with a down payment of $10,000; "John Gessin" is Seller; "John d. Gessin" is "Holder of mortgage . . ."; "John Gessin is "Loss Payee" for Homeowners Insurance purposes; The mobile home is not described in The Agreement; Mr. Aquino testified that he purchased a mobile home from Mr. Gessin and it is the subject of The

4

Agreement; This Arbitrator finds that this is the same mobile home to which Mr. Gessin delivered title as security to Ms. Taitano; This Arbitrator acknowledges, but does not find credible, Mr. Aquino's observation that there was mention of Mr. Gessin's "father" at the time The Agreement was entered into between Gene R. Acquino, Mary Ann D. Kang, and Mr. Gessin; Mr. Gessin offered no evidence that he did not own the mobile home when he entered into The Agreement; . . .Mr. Gessin rested his case at close of Ms. Taitano's case; . . .

    1.24    Mr. Gessin is the owner of The Contract of Sale on the mobile home; Pursuant to The Contract of Sale, Mr. Gessin is entitled to collect the amount of $39,620.71 as of August 2008; no evidence was given that Mr. Gessin has assigned or sold his interest in this contract of sale;

    1.25    Mr. Gessin held the title to the mobile home as security for the payment of The Contract of Sale;

    1.26    Mr. Gessin delivered title to the mobile home to Ms. Taitano intending it as security for her $30,000.00;

    1.27 . . .

    1.28    Mr. Gessin lied under oath when he stated that he did not receive any cash from Ms. Taitano; . . .

    1.29    Mr. Gessin knew on April 14, 2009 and on May 8, 2009 that the Certificate of Ownership B-095164 now on deposit with the Clerk of the Court is the title to the mobile home that is the subject of The Contract of Sale;

    1.30 . . .

    \1.31 . . .

    1.32 . . .

    1.33 . . .

    1.34    There is clear and convincing evidence of Mr. Gessin's oppression, fraud and malice towards Ms. Taitano both express and implied:"

|   |   |
|---|---|
| 1 | 5. The Court then enters it judgment that "plaintiff ALLISON B. TAITANO recover of the defendant, JOHN DAVID GESSIN the sum of $50,000 together with an award of attorney's fees in the amount of $3,000, interest on the $30,000 at the rate of 5.25% from March 9, 2009 to October 18, 2010 in the amount of $2,538.36 and costs . . ."

6. The $56,802.15 judgment debt owed by defendant to plaintiff is nondischargeable under section 523(a)(2) of the Bankruptcy Code.

**WHEREFORE**, plaintiff prays that the court determine that the debt of $56,802.15 is nondischargeable; that plaintiff have judgment against defendant for $56,802.15; and that plaintiff have such other further relief as is just, including reasonable attorney's fees and costs.

Dated: August 1, 2011.

*/s/ Glade L Hall*
GLADE L HALL
Attorney for Plaintiff
Nev. Bar 1609
105 Mt. Rose St.
Reno Nevada 89509
(775) 324-6447

6